1

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Criminal Action |
| | * | No. 13-282 |
| Plaintiff, | * | |
| | * | Section "K" |
| v. | * | |
| | * | New Orleans, Louisiana |
| DARRYL FRANKLIN, | * | January 3, 2014 |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


### RE-ARRAIGNMENT,
### BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
### UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:           U.S. Attorney's Office
                             By:  MAURICE LANDRIEU, ESQ.
                             By:   SHARAN E. LIEBERMAN, ESQ.
                             650 Poydras Street
                             Suite 1600
                             New Orleans, Louisiana 70130

For the Defendant:           Richard C. Teissier, Attorney at
                              Law
                             By:  RICHARD C. TEISSIER, ESQ.
                             636 Baronne Street
                             New Orleans, Louisiana 70113

Court Reporter:              Arlene Movahed

Transcriptionist:            Sherryl Robinson
                             c/o U.S. District Court
                             500 Poydras Street, Room B-275
                             New Orleans, Louisiana 70130
                             (504) 589-7724


Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

2

**I N D E X**

EXHIBITS:                                    Marked      Received

  Darryl Franklin Plea Agreement              37          37

  Darryl Franklin Factual Basis Report        45          45

<u>P R O C E E D I N G S</u>

(Friday, January 3, 2014)

(Call to Order of the Court)

\*   \*   \*   \*   \*

**RE-ARRAIGNMENT**

\*   \*   \*   \*   \*

THE CLERK:  Please be seated.

THE COURT:  Good morning.

(All Counsel respond, "Good morning Your Honor.")

THE CLERK:  Good morning Your Honor, Criminal Action 13-282, Section "K", *USA vs. Darryl Franklin*, here on a Re-Arraignment.

THE COURT:  All right.

MR. LANDRIEU:  Good morning Your Honor, Maurice Landrieu and Sharan Lieberman on behalf of the United States.

MR. TEISSIER:  And Rick Teissier on behalf of Mr. Franklin.  Good morning Your Honor.

THE COURT:  The Court notes the Defendant is present and counsel for the Government and the Defendant have made their appearance for the record.

Mr. Franklin, you have a right to have an attorney at every stage of these proceedings.  I see you have an attorney now.  But if at some point of the proceeding you do not have an attorney, one will be appointed to represent

1    you.

2        Will the clerk please administer the oath to the

3    Defendant?

4        THE CLERK:  Please raise your right hand.

5        THE DEFENDANT MR. FRANKLIN:  I can't --

6        MR. TEISSIER:  Just a little bit, like that,

7    that's fine.

8        THE COURT:  Yes.

9                    *   *   *   *   *

10               **DARRYL FRANKLIN, DEFENDANT, SWORN**

11                    *   *   *   *   *

12        THE CLERK:  Would you please state your name for

13    the record?

14        THE DEFENDANT MR. FRANKLIN:  Darryl Franklin.

15        THE COURT:  Mr. Franklin, do you understand you're

16    now under oath and any statement you may now make, if not

17    truthful, could later be used against you in a --

18        THE DEFENDANT MR. FRANKLIN:  Yes, sir.

19        THE COURT:  -- prosecution for perjury or false

20    statements; do you understand that, sir?

21        THE DEFENDANT MR. FRANKLIN:  Yes, sir.

22        THE COURT:  Excuse me, my voice is a little

23    impaired this morning.

24        I'm advised that Mr. Franklin, that you wish to

25    change your plea as to Counts 1, 2 and 3 of the bill of

```
 1   information; is that correct?

 2             THE DEFENDANT MR. FRANKLIN:  (No response.)

 3             THE COURT:  That you wish to change your plea as to

 4   1, 2 and 3; is that correct?

 5             MR. TEISSIER:  Yes.

 6             THE COURT:  If it's not, then let me know.  Go

 7   home.

 8             MR. TEISSIER:  Do you want to do it?

 9             THE COURT:  When is the trial date in this matter?

10             MR. LANDRIEU:  I don't think we've had a trial

11   date, Your Honor.  This matter was worked out prior to --

12             THE COURT:  All right.

13             MR. LANDRIEU:  -- the bill of information and the

14   indictment being done.

15             THE COURT:  Okay.

16             MR. LANDRIEU:  So it was done as soon as

17   Mr. Franklin told us he was ready to proceed.

18             MR. TEISSIER:  That's correct, Your Honor.

19             THE COURT:  Well, let me ask Mr. Franklin though.

20   He's the one who's got to answer this question:

21             Do you wish to change your plea as to Counts 1, 2

22   and 3 of the bill of information?

23             THE DEFENDANT MR. FRANKLIN:  (No response.)

24             THE CLERK:  We do have a trial date.

25             THE COURT:  Huh?
```

```
1            THE CLERK:  We do have a trial date.

2            THE COURT:  You do have trial?

3            THE CLERK:  Yes.

4            THE COURT:  We do have a trial date.

5            THE CLERK:  Right.  It's February 24th.

6            THE COURT:  February 24th.

7            THE CLERK:  Yes, sir.

8        (Pause.)

9            THE COURT:  Okay.

10           THE DEFENDANT MR. FRANKLIN:  All right.

11           MR. TEISSIER:  Go ahead.

12           THE DEFENDANT MR. FRANKLIN:  Thanks, Your Honor.

13           MR. TEISSIER:  Go ahead.

14           THE COURT:  I apologize.  I could not hear you,

15  sir.

16           THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

17           THE COURT:  Okay.

18           MR. TEISSIER:  Your Honor, we apologize, Judge.

19  It's just that you know, pleading to a possible life sentence

20  is not the --

21           THE COURT:  I understand.

22           MR. TEISSIER:  -- easiest thing to do in the

23  world.

24           THE COURT:  Okay.  Do you wish to have the bill of

25  information read to you, sir?  Or do you wish to waive the
```

1    reading?

2            MR. TEISSIER:  Waive the reading?  You know what it

3    says.

4            THE DEFENDANT MR. FRANKLIN:  I would like to read

5    it.

6            MR. TEISSIER:  We want to --

7            THE COURT:  Do you want to read the bill?

8            THE CLERK:  Would you like me to get up there?

9            THE COURT:  Let's read it.  Let's read it to see

10    what he's charged with.

11            Let's read it, Counsel.

12            MR. LANDRIEU:  Oh, I'm sorry, Your Honor.

13            THE COURT:  Yes.  He has not waived the reading,

14    so we're going to hear what he's charged with.

15            THE DEFENDANT MR. FRANKLIN:  I know I'm charged

16    with, Your Honor.

17            MR. LANDRIEU:  Your Honor, I don't know if I have

18    the actual --

19            THE COURT:  I know that, but --

20            MR. LANDRIEU:  -- bill with me, Your Honor.

21            MR. TEISSIER:  Judge, we went over this.  I spent

22    yesterday at St. Bernard Parish Jail, maybe --

23            THE COURT:  It just called --

24            MR. TEISSIER:  Yes, sir.

25            THE COURT:  -- whether he wants to read it, waive

1   the --

2           MR. TEISSIER:  Yes, sir.

3           THE COURT:  -- waive the reading or not.

4           MR. TEISSIER:  Do you want to waive the reading.

5           THE COURT:  If you want it read to you in open

6   court, we'll certainly accommodate you.

7           MR. TEISSIER:  Do you want to hear that you were

8   charged with the heroin and the guns?

9           MS. LIEBERMAN:  Yeah, we have it.  Sorry, Your

10  Honor.

11          THE CLERK:  All right.

12          MR. TEISSIER:  Darryl?

13          THE COURT:  Do you want to waive the reading of the

14  information, or not?  It's up to you, but we need to move it

15  on, or we'll go to trial on February 24th.

16          MR. TEISSIER:  So that's how --

17          THE DEFENDANT MR. FRANKLIN:  No, Your Honor.  I

18  don't need it read.

19          I don't need it read.

20          THE CLERK:  He's got the same --

21          THE COURT:  All right.

22          THE DEFENDANT MR. FRANKLIN:  I don't -- I don't

23  need it read.

24          THE COURT:  Okay, good.

25          How do you wish to plead, sir?

1          THE DEFENDANT MR. FRANKLIN:  Guilty.

2          THE COURT:  Okay.  Before accepting your plea of

3   guilty, I have to ask you a lot of questions, under the law.

4          So, if you don't understand my question, please ask

5   me to repeat it or try to explain it to you.  And you can

6   talk to your counsel any time you need to during this whole

7   proceeding.

8          You've been charged with a felony in a bill of

9   information.  You realize you have a Constitutional right to

10  be charged by an indictment issued by a grand jury; do you

11  understand that, sir?

12         THE DEFENDANT MR. FRANKLIN:  Yes, sir.

13         THE COURT:  And you wish to waive that right?

14         THE DEFENDANT MR. FRANKLIN:  Yes, sir.

15         THE COURT:  The right to be indicted by a grand

16  jury?

17         MR. TEISSIER:  Yes.

18         Yes, Darryl.

19         THE DEFENDANT MR. FRANKLIN:  Yes, sir.  It's that

20  (inaudible; not speaking near the microphone.) --

21         MR. TEISSIER:  Answer his question, please.

22         THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

23         THE COURT:  Okay.  You do not wish to waive that

24  right?

25         THE DEFENDANT MR. FRANKLIN:  I --

10

1          THE COURT:  In other words, you have been charged

2   by a bill of information.  You have a right to have a grand

3   jury indict you --

4          MR. TEISSIER:  You wanted to waive that.

5          THE COURT:  -- and hear the evidence to indict you;

6   or you have a right to waive that grand jury and I guess I'm

7   asking you now:  Do you wish to waive that right?

8          MR. TEISSIER:  Yes.

9          THE DEFENDANT MR. FRANKLIN:  I don't really know

10  what I want to do.

11         THE COURT:  Well, I can say this:  I will only make

12  -- I will only go through this dance a little bit more.

13         MR. TEISSIER:  I know, I understand.

14         THE COURT:  And we have a jury trial.

15         MR. TEISSIER:  I understand, Your Honor.  I

16  understand.

17         MR. LANDRIEU:  Your Honor, can we have a brief

18  recess?

19         THE COURT:  It's going to be brief.

20         MR. LANDRIEU:  Very brief.

21         THE COURT:  Because I've got things to do.

22         MR. LANDRIEU:  Yes, sir.

23         MR. TEISSIER:  Yes, sir.

24         THE COURT:  So you know, I accommodated this, I

25  have things to do, so it's nothing like a good jury trial.

1          MR. LANDRIEU:  Thank you, sir.

2          MR. TEISSIER:  Yes, Your Honor.

3      **(Brief recess from 9:28 a.m. to 9:38 a.m.)**

4          THE CLERK:  Court is in session.  Please be

5  seated.

6          THE COURT:  Okay.  I think we were at the point

7  where we were asking -- let's see where we were -- you,

8  Mr. Franklin, whether or not --

9          THE DEFENDANT MR. FRANKLIN:  We was at the --

10         THE COURT:  -- do you want --

11         THE DEFENDANT MR. FRANKLIN:  -- did I want to --

12         Do you want to read me the charges?

13         THE COURT:  Yes, sir.

14         THE DEFENDANT MR. FRANKLIN:  No.  No, Your Honor,

15  and I'm sorry about the delay.

16         THE COURT:  That's okay.

17         MR. TEISSIER:  We both apologize, Your Honor.

18         THE COURT:  Not a problem.

19         Before accepting your plea, do you remember I said

20  I'm required to ask you certain questions, and we were

21  talking about the bill of information.

22         You've been charged in a bill of information and

23  you have a right to be charged by a grand jury.  Do you wish

24  to waive your right to be charged by a grand jury?

25         THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

1          THE COURT:  All right.  And you have a

2    Constitutional right to do that; do you understand that?

3          THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

4          THE COURT:  And have you had an opportunity to

5    discuss that waiver with your attorney?

6          THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

7          THE COURT:  Are you waiving this right voluntarily,

8    understandingly with full knowledge of the consequences?

9          THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

10          THE COURT:  Okay.  I'm going to ask you, Counsel:

11          Have you explained the waiver to your client?

12          MR. TEISSIER:  Yes, Your Honor.

13          THE COURT:  Are you satisfied he's waiving his

14    right voluntarily and with full knowledge of the consequences

15    of the waiver?

16          THE DEFENDANT MR. FRANKLIN:  Absolutely, Your

17    Honor.

18          THE COURT:  Okay.  Do you agree with him in his

19    decision to waive the indictment?

20          THE DEFENDANT MR. FRANKLIN:  Absolutely, Your

21    Honor.

22          THE COURT:  Mr. Franklin, have you had enough time

23    to discuss this case with your attorney?

24          THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

25          THE COURT:  Are you satisfied from his

1    representation?

2              THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

3              THE COURT:  What is your age?

4              THE DEFENDANT MR. FRANKLIN:  Twenty-nine, Your

5    Honor.

6              THE COURT:  And how much education have you had?

7              THE DEFENDANT MR. FRANKLIN:  Middle.

8              MR. TEISSIER:  How far did you go?

9              THE COURT:  How far did you go in school?

10             MR. TEISSIER:  Seventh grade.

11             THE COURT:  I'm required to ask everybody this

12   question: Do you read the English language?

13             THE DEFENDANT MR. FRANKLIN:  It seemed to be.

14             THE COURT:  Do you read the English language?

15             THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

16             THE COURT:  Are you, or have you recently been

17   under the care of a doctor or a mental health care

18   provider?

19             THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

20             THE COURT:  Are you taking any medicines?

21             THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

22             THE COURT:  Are you presently under the influence

23   of -- or have you taken or used or consumed any alcohol,

24   narcotic drugs, or other similar substance in the last 24

25   hours?

1          THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

2          THE COURT:  Let me get a little water here, so you

3     can hear me.

4          Did you ever get treated for alcoholism or

5     narcotics addiction?

6          THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

7          THE COURT:  Do either of you have any doubt as to

8     the competence of the Defendant to plead in this matter?

9          MR. LANDRIEU:  The Government does not, Your

10    Honor.

11         MR. TEISSIER:  Absolutely not, Your Honor.

12         THE COURT:  I find the Defendant, Darryl Franklin,

13    competent to plead.

14         Have you gone over the bill of information with

15    your attorney, the charge against you?

16         THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

17         THE COURT:  You're charged in the bill; it was

18    under Count 1, participating in a conspiracy to distribute

19    ten grams or more of heroin, in violation of federal law.

20         Count 2, participating in a conspiracy to use

21    firearms in furtherance of drug trafficking activities in

22    violation of federal law.

23         And Count 3, causing death through the use of a

24    firearm in violation of federal law.

25         And I'm going to give you the maximum possible --

1    you need -- you're entitled to know the maximum possible

2    sentence that could be imposed on your in the event of

3    conviction of those charges, either upon your plea of guilty

4    or after a trial at which you're found guilty.

5           As to Count 1, that would be imprisonment of a

6    minimum of ten years and up to life; a fine of $10 million,

7    restitution if that were deemed appropriate by the Court,

8    mandatory special assessment of $100, cost of incarceration

9    and supervised release and/or probation; and ineligibility

10   for all federal benefits with the exception of any long-term

11   drug treatment program. For a period of five years.

12          And forfeiture of any and all property,

13   constituting or derived from any proceeds you obtained

14   directly or indirectly as a result of the violations and any

15   and all property used or intended to be used in any manner

16   or part to commit and to facilitate the Commission of the

17   instant violations.

18          Now Count 2, imprisonment of not more than 20

19   years, a fine of up to $250,000, restitution if that were

20   appropriate and as determined by the Court.  A mandatory

21   special assessment of $100 and again, cost of incarceration

22   and supervised release and/or probation, and also

23   ineligibility for all federal benefits, with the exception

24   of any long-term drug treatment, and the same forfeiture

25   provision that I just read to you.

1          As to Count 3, imprisonment of up to life, and

2    the statute includes the death penalty, but as I understand

3    it, the Attorney General of the United States has made a

4    decision not to pursue the death penalty in this matter.

5          MR. LANDRIEU:  That is correct, Your Honor.  We

6    have conversations with Washington D.C. and we have received

7    in writing, confirmation from the Attorney General that the

8    Government will not seek the death penalty in this case.

9          THE COURT:  All right.  A fine of up to $250,000,

10   restitution if that were appropriate, a mandatory special

11   assessment, again, cost of incarceration, supervised release

12   or probation, the same.  Ineligibility for all federal

13   benefits except their long-term drug treatment program.  And

14   again, the same forfeiture provision I read to you.

15         Do you understand that those are the maximum

16   sentences as to each count?

17         THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

18         THE COURT:  And just to sum it up, if you plead

19   guilty, you face a mandatory minimum sentence of ten years

20   and up to life as to Count 1; a maximum sentence of 20 years

21   as to Count 2; and a maximum sentence of life imprisonment

22   as to Count 3.  Do you understand that?

23         THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

24         THE COURT:  The United States Sentencing

25   Commission has issued guidelines for Judges to use in

1    determining the sentence in a criminal case.  But the

2    guidelines are merely advisory.  The Court is not bound to

3    follow them, and I can impose the sentence that it's greater

4    that it's greater up to the statutory maximum or less than

5    the minimum suggested by the guidelines, subject to any

6    mandatory minimums that are imposed by law; do you

7    understand that?

8              THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

9              THE COURT:  And then you and your attorney

10   talked about the guidelines and how they might apply to this

11   case?

12             THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

13             THE COURT:  And of course, we cannot determine the

14   guideline sentence range for your case until after a pre-

15   sentence report has been completed, and you and the

16   Government have had an opportunity to review the facts

17   reported by the probation office, and to contest such facts

18   as you may claim are incorrect, if any.  Do you understand

19   that, sir?

20             THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

21             THE COURT:  And after it has been determined what

22   guidelines apply to a case, the Judge has the authority in

23   some circumstances to impose a sentence, and it's more severe

24   or less severe than the sentence called for by the

25   guidelines.  Do you understand that?

1        THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

2        MR. TEISSIER:  Under some circumstances -- let me

3   put it this way:  You understand that by pleading guilty the

4   plea agreement you signed which we'll get into later; by

5   virtue of that plea agreement, you've waived your right to

6   appeal or contest your guilty plea, conviction and any

7   aspect of your sentence, fine and any restitution that I

8   may impose, and including their rights to appeal under

9   the statute which provides for review of the sentence.

10        And under the statute which grants Courts of Appeal

11   jurisdiction appeals from final decisions of her district

12   court.  You waive your right to appeal under the statute,

13   which allows you to challenge the manner in which your

14   sentence was determined, and to challenge any -- the United

15   States sentencing guideline determinations and their

16   application.

17        You've waived your rights under the statutes, 22,

18   28, 2255 and 2241, which provides for post-conviction

19   remedies.  There's a legal and Constitutional basis for you

20   to attack the conviction.

21        Also, you waived your rights pursuant to Rule 60 of

22   the federal Rules of Civil Procedure.  Well, 45 of the

23   federal rules of criminal procedure; any writ you may have

24   that is available to you, or any other collateral challenge

25   to your sentence of any kind, because you've waived these

1    rights.

2            You may appeal your conviction and/or sentence

3    only under the following conditions:

4            First, you pay appeal if I impose a sentence in

5    excess of a statutory maximum.  You can appeal if you can

6    show that the ineffective assistance of counsel directly

7    affected the validity of this waiver of appeal, and

8    collateral jobs rights of the validity of the guilty plea

9    itself.  Do you understand that waiver, sir?

10            THE DEFENDANT MR. FRANKLIN:  Yes, sir.

11            THE COURT:  You have also waived your right to

12    seek attorney's fees under the Hyde Amendment.  You may not

13    -- you have no right to recover any attorneys' fees; do you

14    understand that?

15            THE DEFENDANT MR. FRANKLIN:  Yes.

16            THE COURT:  And by signing the plea agreement and

17    factual basis, you have waived your rights pursuant to Rule

18    410 of the Federal Rules of Evidence.  So in the event you

19    violate the plea agreement, withdraw your decision to plead

20    guilty or otherwise set aside that agreement;

21            Any statements you made to law enforcement agents

22    or the attorney for the prosecuting authority during plea

23    discussions, any statements you made during any court

24    proceedings involving your plea of guilty, including any

25    factual bases or summaries signed by you, and any leads from

1    such statements, factual bases or summaries are admissible in

2    the event against you in any and all criminal prosecutions;

3    do you understand that?

4              THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

5              THE COURT:  All right.  If the sentence I impose is

6    more severe than you expected, you'll still be bound by your

7    plea and you'll have no right to withdraw it; do you

8    understand that?

9              THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

10             THE COURT:  And of course you understand that

11   there's a mandatory minimum of at least ten years in this

12   case; do you understand that?

13             THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

14             THE COURT:  And after a period of imprisonment is

15   ordered, in addition to such terms of imprisonment you'll be

16   placed on a term of supervised release for a period of not

17   less than five years as to Count 1 and not more than five

18   years as to Counts 2 and 3.

19             Supervised release is a term of supervision which

20   imposes certain conditions of release after expiration of the

21   term of imprisonment.

22             And if you were to violate any of the conditions

23   of the supervised release, you may be imprisoned for the

24   entire term of the supervised release without credit for

25   time served on supervised release; do you understand that,

1    sir?

2            THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

3            THE COURT:  Okay.  Do you understand that by

4    pleading guilty you may lose certain civil rights:  The right

5    to vote, the right to hold public office, the right to serve

6    on a jury, and the right to possess any kind of firearm; do

7    you understand?

8            THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

9            THE COURT:  If I accept your plea of guilty, do you

10   understand that I can impose the maximum possible sentence

11   or an alternative as I've just related to you?

12           THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

13           THE COURT:  If I accept your plea of guilty, you

14   will not be entitled to a trial, the Government will not be

15   required to prove you're guilty; do you understand that?

16           THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

17           THE COURT:  If you were to keep your plea of not

18   guilty you would be entitled to a speedy and public trial by

19   a jury of twelve or by the Judge if a jury trial is waived;

20   do you understand that?

21           THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

22           THE COURT:  Before you can be found guilty the

23   Government will be required to prove in a trial by evidence

24   and beyond a reasonable doubt the following facts:

25           Under the Count 1, which is a conspiracy count, the

1    Government would have to prove a conspiracy and to establish

2    a conspiracy to distribute and to possess with the intent to

3    distribute controlled substances, the Government must prove

4    each of the following beyond a reasonable doubt:

5           First, that two or more persons, directly or

6    indirectly, reached an agreement to distribute and possess

7    with intent to distribute one kilogram or more of a mixture

8    or substance containing a detectible amount of heroin.

9           Second, that the Defendant knew of the unlawful

10   purpose of the agreement.

11          And third, that the Defendant charged in the

12   agreement willfully, that is with intent to further its

13   unlawful purpose.

14          The Government need not prove that the alleged

15   conspirators entered into any formal agreement, nor that they

16   directly stated between themselves all of the details of the

17   scheme.

18          The Government need not prove that all of the

19   details to the scheme alleged in the bill of information

20   were actually agreed upon or carried out, nor must it prove

21   that all of the persons alleged to have been members of the

22   conspiracy were such, or that the alleged conspirators'

23   actions succeeded in accomplishing their unlawful

24   objectives.

25          Mere presence at the scene of an event, even with

23

1  knowledge that a crime is being committed or the mere fact

2  that certain persons may have associated with each other,

3  may have assembled together, and discussed common names and

4  interests, does not necessarily establish proof of the

5  existence of a conspiracy.

6  Also, a person who has no knowledge of a

7  conspiracy but who happens to act in a way which advances

8  some purpose of the conspiracy is not there to become a

9  conspirator.

10  Knowing means that the act was voluntary and

11  intentional and not because of mistake or accident.

12  Intentionally means that willfully and purposely

13  intent means to act with will and purpose.

14  Willfully means that the act was committed

15  voluntarily and purposely, with the specific intent to do

16  something that the law forbids, not as to say it was bad

17  purpose to disobey or disregard the law.

18  To possess with intent to distribute means to

19  possess with intent to deliver or transfer the possession of

20  a controlled substance to another person, with or without any

21  financial interest in the transaction.

22  Possession, as that term is used here can be of two

23  kinds, actual and constructive.  A person who had direct

24  control over a thing is in actual possession of it.

25  A person who although is not in actual possession,

1  knowingly has both the power and the intention at a given

2  time, to exercise dominion or control over a thing, either

3  directly or through another person, is then in constructive

4  possession.

5        Possession may be sole or joint if one person alone

6  has actual or constructive possession of the thing.

7  Possession is sole if two or more persons share actual or

8  constructive possession.  Possession is sole if two or more

9  persons share actual or constructive possession of a thing.

10        Excuse me.

11        A possession is sole if one person alone has actual

12  or constructive possession over a thing.  If two or more

13  persons have actual or constructive possession of a thing, it

14  is joint.

15        Now we get to the elements of the crime of

16  distribution that is that the Defendant had possession of a

17  controlled substance, and that the substance was in fact

18  heroin, that the Defendant delivered and transferred

19  possession of a controlled substance to another person with

20  or without any financial interest in the transaction.

21        And the elements of the crime of possession with

22  intent to distribute are that you normally possess the

23  controlled substance, that the substance was in fact heroin,

24  and that you possessed a controlled substance with the intent

25  to distribute them.

1           And I have previously described what possession

2   means in this context.  That's Count 1.  Do you understand

3   the elements of Count 1?

4           THE DEFENDANT MR. FRANKLIN:  Yes, sir.

5           THE COURT:  Count 2 is the conspiracy to use

6   firearms in furtherance of drug trafficking activities in

7   violation of federal law.

8           Again, conspiracy must be established to use

9   firearms in front of drug trafficking activities, the

10  Government must prove the following beyond a reasonable

11  doubt:

12          Saying that two or more persons directly or

13  indirectly reached agreement with intent to knowingly use or

14  carry firearms in relation to drug trafficking activities,

15  that you knew of the unlawful purpose of the agreement, that

16  you joined in the agreement willfully, and that the overall

17  scope of the conspiracy involved knowingly using or carrying

18  a firearm during and in relation to a drug trafficking

19  crime.

20          I have previously defined knowingly and willfully

21  for you.

22          The elements of the crime of using or carrying a

23  firearm during the commission of a drug commission -- drug

24  trafficking crime or first, that the Defendant committed

25  the crime alleged in Count 1, which is a drug trafficking

1  crime.

2          Second, that the Defendant knowingly used and

3  carried a firearm during and in relation to the Defendant's

4  commission of the crime charged in Count 1.

5          And to prove that you used a firearm doing and in

6  relation to a drug trafficking crime, the Government must

7  prove that the Defendant actively employed the firearm in

8  the commission of Count 1, such as the use that is intended

9  to bring about a change in the circumstances of the

10  commission of Count 1.

11          Active employment of a firearm may include

12  brandishing, displaying, referring to, bartering, striking

13  with, firing or attempting to fire the firearm.

14          Use is more than mere possession of a firearm or

15  having it available during the drug trafficking crime.

16          To prove the Defendant carried his arms during and

17  in relation to a drug trafficking crime -- trafficking crime

18  -- the Government must prove that the Defendant carried the

19  firearm in the ordinary meaning of the word "carry," such as

20  transporting a firearm on the person or in a vehicle.

21          The Defendant's carrying of the firearm could not

22  be merely coincidental or unrelated to the drug trafficking

23  crime.

24          And relation means that the firearm must have been

25  -- must have some purpose, role or effect with respect to

1    the drug trafficking crime.

2              Under Count 3, which is a firearm -- using a

3    firearm in furtherance of crime of violence and drug

4    trafficking crime which resulted in death.  First, you

5    committed the crime of conspiracy to distribute and

6    possess with the intent to distribute heroin as alleged in

7    Count 1.

8              Have you committed the crime of conspiracy or used

9    firearms in furtherance of drug trafficking activities as

10   alleged in Count 2?

11             And second, that you knowingly used or carried a

12   firearm during and in relation to the commission of the crime

13   of conspiracy to distribute and possess with intent

14   distribute heroin, and the crime of conspiracy is found in

15   furtherance of the drug trafficking activities?

16             Third, that you've caused the death of the person

17   named in the bill of information through the use of a

18   firearm during and in relation to committing the crime of

19   conspiracy to distribute.

20             And possessed with the intent to distribute heroin,

21   and the crime of conspiracy to use firearms in furtherance

22   of the drug trafficking activities; and that the killing of

23   the person was the murder as defined, Title 18 United States

24   Code, Section 1111.

25             Now the Title 18 under that section:  It is a crime

1    for anyone to murder another human being with premeditation.

2    And the Government must prove beyond a reasonable doubt and

3    that as to that element, that you unlawfully killed the

4    victim, that you killed the victim with malice and

5    forethought, that the killing was premeditated, and that the

6    killing took place within the territory of jurisdiction of

7    the United States.

8          To kill with malice or forethought means to kill

9    another person deliberately and intentionally, and to act

10   with callous disregard for human life.

11         Define malice or forethought:  It does not require

12   that the Government proved you hated the person killed or

13   felt ill will toward that victim at the time in determining

14   whether the killing was with malice or forethought, the use

15   of a weapon or instrument in the manner in which the death

16   is caused is appropriate to consider the proof beyond a

17   reasonable doubt.

18         A killing is premeditated when it is the result of

19   planning or deliberation.  The amount of the time needed for

20   a premeditation of a killing depends on the person and the

21   circumstances, and it must be long enough for the killer

22   after forming the intent to kill to be fully conscious of

23   that intent.

24         To prove that the Defendant discharged a firearm

25   the Government must prove the Defendant fired the weapon.

1    Do you understand the elements of that crime, sir?

2                THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

3                THE COURT:  At the trial the Government would be

4    required to confront you with witnesses upon whose testimony

5    it relies to obtain a conviction and you would have the right

6    -- or your attorney would have the right to question those

7    witnesses; do you understand that?

8                THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

9                THE COURT:  At the trial you would be presumed

10   innocent until such time if ever the Government establishes

11   your guilt by competent evidence beyond a reasonable doubt;

12   do you understand that?

13               THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

14               THE COURT:  Also for the trial you would be

15   entitled to call witnesses under what's called compulsory

16   process.  That is you could compel by subpoena witnesses to

17   testify on your behalf; do you understand that?

18               THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

19               THE COURT:  If you were tried by a jury all twelve

20   jurors must agree on your guilt before you could be found

21   guilty; do you understand that?

22               THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

23               THE COURT:  And you are pleading guilty because you

24   are in fact guilty of the crime charged?

25               THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

1              THE COURT:  To put it another way, you're pleading

2    guilty because you did the acts charged in the information?

3              THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

4              THE COURT:  Have you been influenced, induced or

5    persuaded to plead guilty because of any threats made by

6    anyone?

7              THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

8              THE COURT:  And have you been influenced, induced

9    or persuaded to plead guilty because of any promises made by

10   anyone?

11             THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

12             THE COURT:  Has anyone, including your attorney,

13   told you exactly what sentence I will impose on you if I

14   accept your plea of guilty?

15             THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

16             THE COURT:  And you understand as I have already

17   said, that I have the discretion to sentence you up to any

18   sentence up to the statutory maximum, which is life in this

19   case, and that any guideline range you have discussed with

20   your attorney is merely advisory, not binding on me; do you

21   understand that?

22             THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

23             THE COURT:  Do you want to give a synopsis of the

24   plea agreement in this matter, sir?

25             MR. LANDRIEU:  Yes, sir, Your Honor.

1          We do have a seven page document that outlines the

2   entire agreement between the United States and the Defendant,

3   Mr. Darryl Franklin.

4          Your Honor, well before I go into the summary of

5   this document, this document was in fact executed back on

6   October 25th, 2013.  That is obviously before the bill of

7   information was filed in connection with this Court.

8          So what we've done, because at the time we executed

9   this document we didn't know what court it would be assigned

10  to, so we have written in, in blue ink, Judge Stanwood Duval

11  on top, as well as the case number which is 12-282 (sic),

12  Section "K".

13          THE COURT:  Excuse me.

14          MR. LANDRIEU:  This document -- as part of this

15  document the Defendant has agreed to plead guilty in a

16  timely fashion on his -- through his cooperation with the

17  Government.  He has agreed to waive his right to be charged

18  by an indictment, and has allowed the Government to charge

19  him by way of bill of information.

20          He has also agreed to plead guilty to Counts 1, 2

21  and 3 of the bill of information and to waive his rights

22  pursuant to 410 of the Federal Rules of Evidence.

23          However, this plea agreement was in fact predicated

24  on the decision of the Attorney General of the United States

25  or his designee not to seek the death penalty against Darryl

1    Franklin in this case, since we have executed this document

2    again we have had conversations with Washington and the

3    Attorney General has written -- has given us instructions in

4    writing not to seek the death penalty in connection with

5    this case.

6              However if the attorney general approved this plea

7    agreement and the Defendant then chose to rescind this plea

8    agreement and not plead guilty, the Government does have the

9    right to use this document and the Defendant's admitted

10   factual basis as an admission of his guilt to the charged

11   offenses, in the Government's case-in-chief during the guilt

12   phase and/or the death penalty phase of the trial, the above

13   reference.

14             Now, the Defendant understands that the Federal

15   Rule of Evidence 410 provides him protection from the use of

16   such admissions made during plea negotiations or as a result

17   of plea agreements, but knowingly and voluntarily waive that

18   right.

19             This plea agreement outlines the three counts that

20   he is pleading guilty to:  The drug conspiracy, the gun

21   conspiracy, and as well as the murders charged in the 924(j)

22             This plea agreement outlines the maximum penalties

23   that he is facing, that this Court has already advised him

24   of, that is ten years to life on the drug count; zero to 20

25   years on the gun count; and up to life imprisonment, any

1    number of year up to life imprisonment on the murder count,

2    which is Count 3.

3         This plea agreement also outlines the terms --

4    also indicates that if he pleads guilty to Counts 1, 2 and 3

5    of the bill of information, the Government agrees not to

6    charge the Defendant with any other violations of the

7    Federal Controlled Substances Act, the Federal Gun Control

8    Act, or the Federal Racketeering Influence and Corrupt

9    Organization Act, which is known as RICO.

10        That he may have committed in the Eastern District

11   of Louisiana, as long as the Defendant has truthfully

12   informed federal agents of the full details of those

13   crimes.

14        The Government also agrees that since the Defendant

15   is pleading guilty and cooperating in a timely fashion, he

16   should get all three points for his acceptance of

17   responsibility in this matter.

18        Furthermore, if the Court accepts the guilty pleas

19   of these counts, the New Orleans District Attorney's office

20   has agreed to dismiss the two murder charges that are

21   currently pending in the Criminal District Court,

22   specifically the murder charges concerning the victim

23   Quelton Broussard, which took place on April 12th, 2010,

24   under NOPD Item Number D-16553-10, and the victim, Calvin

25   Celestine, which took place on February 6th, 2011 under

1    NOPD Item Number B-08892-11, as they pertain to Darryl

2    Franklin.

3            There is also a $100 special assessment fee that

4    he is advised of, and as well as this plea agreement

5    outlines the maximum terms of supervised release, again,

6    which this Court has advised him of, of up to five years

7    of supervised release, if and when he is released from

8    prison.

9            This plea agreement also specifically outlines his

10   waiver of appellate rights, which again, this Court has gone

11   through in detail already, which he waives all of his rights

12   to appeal and contest the sentence under -- except under

13   extremely limited circumstances.

14           This plea agreement is predicated on the fact the

15   Defendant agrees to submit to interviews whenever and

16   wherever requested by law enforcement authorities.  The

17   Defendant understands he must be completely truthful in

18   these debriefings.  If he is not completely truthful, this

19   plea agreement can be null and void.

20           The Government also agrees to bring to the

21   attention of the Court any cooperation the Defendant has

22   provided to the Government.  However, the Government reserves

23   the right to determine whether or not that cooperation is

24   substantial.  The Government also reserves the right to bring

25   the downward departure motion if we feel it necessary either

1 prior to sentencing, pursuant to 5K, or after sentencing,

2 pursuant to Rule 35 of the Federal Rules of Criminal

3 Procedure.

4    The United States Attorney and the New Orleans

5 District Attorney's Office also agree that any statements or

6 testimony given by the Defendant pursuant to questions asked

7 by federal or state law enforcement officers or prosecutors

8 as a result of this agreement, will not be used against the

9 Defendant or will anything derived from those statements or

10 testimony be used against the Defendant, except for the

11 purpose of impeachment, as long as the Defendant fulfills

12 his obligations as required by the terms of this agreement.

13 See the 410 waiver above.

14    However, all parties understand that any statements

15 or testimony given by the Defendant can be used as leads for

16 other reasons against other persons.  Furthermore, the

17 Defendant fully understands that should he commit perjury or

18 give false statements to either federal or state law

19 enforcement officers or prosecutors, all of his statements

20 given pursuant to this agreement can be used to prove any

21 offenses in either state or federal court.

22    If it furthermore is determined that the Defendant

23 committed perjury or provided false statements to either

24 federal or state prosecutors or law enforcement officers,

25 the federal government or the state may use those statements

36

1    given by the Defendant for any purposes, and would have the

2    option of declaring this agreement null and void.

3           This plea agreement also outlines the asset

4    forfeiture that he agrees to give to the United States.

5           This document was signed by me, Your Honor, on

6    behalf of the United States, as well as Sharan Lieberman and

7    dated on October 25th, 2013.  At the time we executed this

8    document, First Assistant District Attorney Graymond Martin

9    also signed in our presence on behalf of the New Orleans

10   District Attorney's Office.

11          This document was personally read to Mr. Franklin

12   by me, and explained to him through a couple of different

13   meetings that we've had, but specifically on October 25th,

14   2013 while his attorney Mr. Rick Teissier was present.

15          We have in fact initialed each and every page of

16   this document.

17          Mr. Franklin, is that your signature on the last

18   page?

19          THE DEFENDANT MR. FRANKLIN:  Yes, sir.

20          MR. LANDRIEU:  Mr. Teissier, is that your signature

21   on the last page?

22          MR. TEISSIER:  Yes, sir.

23          THE COURT:  Mr. Franklin, are those your initials

24   on each page of this document?

25          THE DEFENDANT MR. FRANKLIN:  Yes, sir.

1              MR. LANDRIEU:  Your Honor, the Government would

2    submit that this is the plea agreement in connection with

3    this case.

4              THE COURT:  Let it be filed into the record.

5              Mr. Franklin, do you understand what Mr. Landrieu,

6    the Assistant United States Attorney --

7              First, let me ask Counsel.

8              Counsel, is that your understanding of the plea

9    agreement in this matter --

10             MR. TEISSIER:  Absolutely, Your Honor.

11             THE COURT:  -- as outlined by Mr. Landrieu?

12             MR. TEISSIER:  Absolutely, Your Honor.

13             THE COURT:  Now let me ask you, Mr. Franklin.  Is

14   that your understanding of the plea agreement as outlined by

15   Mr. Landrieu?

16             THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

17             THE COURT:  And do you understand that although

18   the United States Attorney has agreed not to charge you with

19   other violations of the Federal Controlled Substance Act,

20   the Federal Gun Control Act, and the Federal Racketeering

21   Influenced and Corrupt Organizations Act, and to recommend

22   the dismissal of the two murder charges pending in the

23   Louisiana State District Court to the Parish of Orleans,

24   it's merely a recommendation and I'm not bound by it until I

25   grant that motion; do you understand that?

1          THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

2          THE COURT:  Okay Counsel, have you explained the

3   charge to your client?

4          MR. TEISSIER:  Absolutely, Your Honor.

5          THE COURT:  And you are satisfied that he knows

6   and understands what he is charged with?

7          MR. TEISSIER:  Yes, Your Honor.

8          THE COURT:  And have you had full opportunity to

9   investigate the facts, the law, any defenses your client may

10  have and in general to advise and counsel with him?

11         MR. TEISSIER:  Yes, Your Honor.

12         THE COURT:  Do you agree with him in his decision

13  to plead guilty in this case?

14         MR. TEISSIER:  Absolutely, Your Honor.

15         THE COURT:  You're satisfied he's pleading guilty

16  voluntarily and understandingly, with full knowledge of the

17  consequences of his plea?

18         MR. TEISSIER:  Yes, sir.

19         THE COURT:  All right.  Other than going over the

20  guidelines and explaining the maximum statutory sentence and

21  the mandatory minimum; have you made any representations to

22  him as to what sentence I will impose?

23         MR. TEISSIER:  No, Your Honor.

24         THE COURT:  Okay.  Mr. Franklin, you understood the

25  questions I asked of your attorney, his answers?

39

1          THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

2          THE COURT:  Do you have any comments to make to me,

3    concerning any of my questions or his answers?

4          THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

5          THE COURT:  Okay.  Mr. Landrieu, I'll give you the

6    option of reading the entire factual basis or synopsizing it.

7    I assume it has been read to the Defendant inside?

8          MR. LANDRIEU:  Yes, Your Honor.  We do have a nine

9    page factual basis.  It's not as long as some of the other

10   ones we've presented to this Court.

11         THE COURT:  That's true.

12         MR. LANDRIEU:  But I can do, I believe, a summary

13   of it.

14         THE COURT:  Okay.

15         MR. LANDRIEU:  For this Court.

16         THE COURT:  All right.

17         MR. LANDRIEU:  This document was again signed back

18   on October 25th by myself and Ms. Lieberman on behalf of the

19   United States.

20         Mr. Darryl Franklin, is that also your signature?

21         THE DEFENDANT MR. FRANKLIN:  Yes.

22         MR. LANDRIEU:  And Mr. Teissier, is that also your

23   signature?

24         MR. TEISSIER:  Yes.

25         MR. LANDRIEU:  Are those also your initials on each

40

1    and every page?

2          THE DEFENDANT MR. FRANKLIN:  Yes.

3          MR. LANDRIEU:  Mr. Teissier?

4          MR. TEISSIER:  Yes.

5          MR. LANDRIEU:  Okay.  Your Honor, this factual

6    basis, and I will do a very brief summary of it, outlines

7    the fact that Mr. Franklin has agreed that he is a -- was a

8    member of a group of individuals who hung out on what is

9    known as the G-Strip of the City of New Orleans, that he was

10   involved with several individuals who hung out in that area

11   of the city, involving drugs.

12         And he was in the process of, you know, of being in

13   a conspiracy that distributed a significant amount of drugs

14   throughout the City of New Orleans, and had connections

15   outside of the State of Louisiana, actually.

16         During the course of this conspiracy, he is -- has

17   agreed that he is -- his organization is responsible for

18   distributing and possessing with intent to distribute more

19   than 30 kilograms of heroin in and around the City of

20   New Orleans, going back as far as 2008, all the way up until

21   the present time.

22         During the course of this conspiracy, around 2010

23   through the present, Darryl Franklin used firearms to further

24   the conspiracy possess with the intent to distribute heroin

25   in New Orleans.  Specifically, Darryl Franklin used firearms

1    and the thread of violence against his drug competitors just

2    to -- in order to secure his position of authority in his

3    organization.

4              For example, on or around January 10th -- January

5    of 2010, an individual that was known as "X" was an associate

6    of a known drug rival of Franklin's.

7              On or around January 12th, 2010 to further inflict

8    violence on his rival drug dealer and show his dominance over

9    the drug trade in the Ninth Ward of New Orleans, Franklin

10   enlisted the assistance of Gregory Stewart to find "X" and to

11   kill him.

12             Franklin and Stewart got into a Dodge sedan and

13   drove looking -- and drove around looking for "X".  Franklin

14   was a passenger in the seat of the car, and Stewart was the

15   driver.

16             When they found "X" walking down the street near

17   the G-Strip, Stewart drove up to "X" and stopped the

18   vehicle.

19             Franklin got out of the vehicle and stated, "You

20   know what time it is?"

21             "X" started running and Franklin began shooting at

22   him with a black semi-automatic rifle, firing 30 rounds at

23   "X".  "X" survived but sustained a gunshot wound to the

24   elbow.

25             Various witnesses would testify that Franklin chose

1   Gregory Stewart, who was a low level member of his drug

2   organization to be his muscle and to assist him in using

3   firearms to carry out his shootings, and to intimidate

4   competitors.

5           The witnesses, cooperating individuals will

6   testify that Gregory Stewart, Jasmine Perry, Terrioues

7   Owney, Evans Lewis, CNAP (phonetic) and others were

8   individuals who had used firearms to carry out hits or other

9   acts of violence at the direction of Franklin for his

10  benefit to secure his superiority of Franklin's drug

11  organization.

12          That's just an example of the activity that was

13  going on concerning his distribution of heroin, as well as

14  the use of the firearms.  This was one of the examples.

15          Count 3 really goes into the murder of Quelton

16  Broussard, which discusses it on Monday, April 12th, 2010.

17  Quelton Broussard was shot and killed by Defendant Darryl

18  Franklin, Gregory Stewart and Merle Offray near the 2800

19  block of Clouet Street while Broussard was in the driver's

20  seat of a blue Chevrolet Impala.

21          Broussard sustained multiple gunshot wounds to the

22  chest and head.  According to the New Orleans coroner,

23  Broussard's death was classified as a homicide.

24          Cooperating eyewitnesses would testify that they

25  witnessed Franklin, Stewart and Offray murder Broussard.

1   They would testify that this murder was done in retaliation

2   for an earlier shooting that Broussard and his associates

3   participated in against Franklin's crew.

4           It should be noted that the retaliatory shooting

5   took place immediately after Broussard's crew had shot up

6   Franklin's crew.

7           The witnesses would also testify that Broussard

8   and his associates were also street level drug dealers and

9   had an ongoing turf battle with Franklin, Stewart and their

10  associates.

11          There is also information in this factual basis

12  that's concerning relevant conduct.  It is the murder of

13  Mr. Calvin Celestine.  On February 6th, 2011 Stewart and

14  Owney killed Calvin Celestine at the direction of a guy

15  whose name was Merle Offray.

16          Prior to the shooting Celestine had given Franklin

17  approximately $60,000 to purchase a kilogram of heroin.  Once

18  Franklin had the money for the heroin, Stewart was directed

19  to kill Celestine by Offray.  Franklin had no prior knowledge

20  to Offray's plans to order the killing of Celestine.

21          Stewart had only approached Celestine while he was

22  sitting in a black Chevrolet Tahoe in an apartment complex

23  that was located on Curran Boulevard.  Stewart only opened

24  fire on Celestine with a 223 semi-automatic rifle and a .40

25  caliber handgun.

1          This Glock 27 was also used in the shooting deaths

2    of Jerome "Man Man" Hampton and Renatta "Magnolia Shorty"

3    Lowe in December of 2010.

4          At the time of this shooting at least two

5    cooperating witnesses have independently stated this, that

6    Stewart confessed being responsible for the killing of

7    Celestine at the direction of Offray.

8          After Stewart and Owney killed Celestine, Franklin

9    gave Stewart and Owney a quantity of heroin that Franklin

10   had purchased using Celestine's money as payment for the

11   murder.

12         On February 20th of 2013 Stewart called FBI agent

13   Jonathan Wood on a telephone from jail and told him that he

14   was responsible for this murder of Celestine.

15         Pursuant to his plea agreement, Darryl Franklin

16   freely admits that he learned that Merle Offray ordered

17   Stewart and Owney to shoot and kill Celestine over a drug

18   dispute after the killing occurred.

19         Franklin also admits that he paid Stewart on behalf

20   of Offray for killing -- to sell Celestine like Stewart an

21   amount of heroin that Franklin had purchased with the money

22   that was initially provided by Celestine.

23         This is just a brief summary of the factual basis,

24   Your Honor.  This is the document.  Again, it was read to

25   Mr. Franklin.  In fact, during the course of us writing out

1    this factual basis.  Mr. Franklin himself had some changes

2    that we did in fact agree to make and this was the final

3    draft that all parties had agreed to.

4         Is that correct, Mr. Franklin?

5         THE DEFENDANT MR. FRANKLIN:  Yes, sir.

6         MR. LANDRIEU:  And I would submit this factual

7    basis report.

8         THE COURT:  Let it be submitted into evidence.

9         MR. TEISSIER:  And there has been -- changes were

10   in fact made to the document after we read the first draft

11   of the document for the changes that we asked to be made,

12   and those were made in the final draft.

13        THE COURT:  Thank you, Counsel.

14        Okay.  Mr. Franklin, do you wish to ask or have

15   your attorney ask Mr. Landrieu anything about what he just

16   stated into the record, or anything else contained in the

17   factual basis you signed?

18        THE DEFENDANT MR. FRANKLIN:  No, Your Honor.

19        THE COURT:  You heard the evidence and the facts

20   which pertained to the charges against you?

21        THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

22        THE COURT:  And you understand them?

23        THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

24        THE COURT:  And are the statements made by

25   Mr. Landrieu and the statements contained in the factual

46

1    basis, the nine page factual basis; correct?

2                THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

3                THE COURT:  Okay.  Let me ask you again:  Do you

4    fully understand the charges against you?

5                THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

6                THE COURT:  Do you fully understand the

7    consequences of your plea of guilty?

8                THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

9                THE COURT:  Are you pleading guilty because you

10   are in fact guilty?

11               THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

12               THE COURT:  And you're pleading guilty voluntarily

13   and of your own free will?

14               THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

15               THE COURT:  Although you have indicated throughout

16   these proceedings the desire to plead guilty, you realize you

17   still have the right to maintain your plea of not guilty; do

18   you understand you have that right?

19               THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

20               THE COURT:  Do you still wish to plead guilty,

21   sir?

22               THE DEFENDANT MR. FRANKLIN:  Yes, Your Honor.

23               THE COURT:  Based upon the testimony received I

24   find that there is a factual basis for the guilty plea in

25   this matter, and do therefore adjudge the Defendant Darryl

1    Franklin guilty as to his plea of guilty with respect to

2    Counts 1, 2 and 3 of the bill of information.

3            I'm going to order that a pre-sentence

4    investigation be made and sentencing will occur on?

5            THE CLERK:  Wednesday, April the 16th, 2014 at

6    9:00 a.m.

7            THE COURT:  A pre-sentence report will be prepared

8    by the Probation Office to assist the Court in sentencing

9    you.  And you're going to be required to furnish information

10   to the Probation Office and I encourage your attorney to be

11   present at that time.

12           The initial interview with the Probation Office

13   will occur within two weeks from today and you and your

14   attorney are directed to avoid any delays in attending this

15   interview.

16           You and your attorney will be permitted to read the

17   pre-sentence report before the sentencing hearing and then

18   make objections to it if you have objections.

19           You and your attorney will be afforded an

20   opportunity to speak on your behalf at the sentencing

21   hearing.

22           I note that the Defendant is in custody.  He is

23   remanded to custody.

24           MR. LANDRIEU:  Yes, sir.

25           Thank you, Your Honor.

1              Your Honor, I do want to thank the Court for taking

2    its time on a special day to do this Re-Arraignment for us.

3    I know it was out of the ordinary, so we do appreciate it.

4              THE COURT:  That's all right.

5              MR. TEISSIER:  And we appreciate it as well, Your

6    Honor.

7              THE COURT:  All right.  This matter is concluded.

8              MR. TEISSIER:  Thank you.

9                         *    *    *    *    *

10                    (Hearing is Concluded)

# **C E R T I F I C A T E**

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**S/Sherryl P. Robinson**                         **_2/1/17_**
**Sherryl P. Robinson**                              **Date**